**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
SILVERMAN PARTNERS, L.P., HARVEY
SILVERMAN and KAREN SILVERMAN,

                Plaintiffs,            **MEMORANDUM OF**
                                  **DECISION AND ORDER**
         -against-                09-cv-1372 (ADS)(WDW)

FIRST BANK, WACHOVIA BANK, N.A.,
MARC ROBERTS, L. SHERI GRADY-
MERKLE and WEALTH GUARD ADVISORY
SERVICES, LLC,

                Defendants.
---------------------------------------------------------X
**APPEARANCES:**

**Lewis Johs Avallone Aviles, LLP**
*Attorneys for the plaintiffs*
425 Broad Hollow Road
Suite 400
Melville, NY 11747
        By:    James F. Murphy, Esq., Of Counsel

**Danzig Fishman & Decea, Esqs.**
*Attorneys for the plaintiffs*
One North Broadway, Suite 1202
White Plains, NY 10601
        By:    Thomas B. Decea, Esq., Of Counsel

**Morrison & Foerster LLP**
*Attorneys for the defendant First Bank*
1290 Avenue of the Americas
New York, NY 10104
        By:    Edward J.W. Blatnik, Esq.
                   James M. Bergin, Esq.
                   Jamie A. Levitt, Esq., Of Counsel

**K & L Gates LLP**
*Attorneys for the defendant Wachovia Bank, N.A.*
599 Lexington Avenue
New York, NY 10022
      By:    Michael R. Gordon, Esq.
              Catherine R. Keenan, Esq., Of Counsel

**Steven Cohn, PC**
*Attorneys for the defendant Marc Roberts*
One Old Country Road, Suite 420
Carle Place, NY 11514
      By:    Steven Cohn, Esq., Of Counsel

**Mower Carreon & Desai, LLP**
*Attorneys for the defendants L. Sheri Grady-Merkle and Wealth Guard Advisory*
    *Services, LLC*
8001 Irvine Center Drive
Suite 1450
Irvine, CA 92618
      By:    Jon R. Mower, Esq.
              James A. Burton, Esq., Of Counsel

**Zukerman Gore Brandeis & Crossman LLP**
*Attorneys for the defendants L. Sheri Grady-Merkle and Wealth Guard Advisory*
    *Services, LLC*
875 Third Avenue
28th Floor
New York, NY 10022
      By:    Jeffrey L. Friesen, Esq.
              John K. Crossman, Esq., Of Counsel

**SPATT, District Judge.**

       The plaintiffs in this case allege that defendant Marc Roberts, a former

business associate of plaintiff Harvey Silverman, orchestrated a complex financial fraud

that has cost them more than one hundred million dollars.  The plaintiffs further allege

that Roberts was assisted, in varying degrees, by the named defendants, as well as

several other individuals and entities that they seek to add as defendants in this case.

Currently before the Court are six motions: a motion to amend the complaint, three motions to dismiss, a motion to stay or dismiss, and a motion for preliminary relief. The Court's determination of each of these motions is set forth below.

## I. BACKGROUND

The plaintiffs Harvey Silverman, Karen Silverman, and Silverman Partners, L.P. ("Silverman Partners") originally filed this suit in New York State Supreme Court for Suffolk County on March 13, 2009, naming as defendants First Bank, Inc. ("First Bank") and Deutsch Bank Trust Company Americas ("Deutsch Bank"). The plaintiffs alleged that then-third party Marc Roberts had improperly established and drew on lines of credit in the plaintiffs' names from these banks, and that the banks were liable for allowing this to happen. On April 2, 2009, that action was removed to the United States District Court for the Eastern District of New York on diversity grounds by First Bank. At the same time, First Bank filed suit in the same federal court against Harvey Silverman, Silverman Partners, and Roberts to recover on the same loan that the plaintiffs alleged First Bank improperly administered.

On June 8, 2009, the plaintiffs amended their complaint in the present action (the "First Amended Complaint" or "FAC"), and, in addition named as defendants Wachovia Bank, N.A. ("Wachovia"), Pacific Mercantile Bank ("Pacific Mercantile"), Marc Roberts, Sheri Grady-Merkle, and Wealth Guard Advisory Services, LLC ("Wealth Guard"). The plaintiffs allege in the FAC that Roberts orchestrated a complex scheme in which he misrepresented himself as an agent of the plaintiffs, and thereby procured and drew on loans from First Bank, Wachovia, Deutsch Bank and,

and Pacific Mercantile.  According to the FAC, Roberts then misappropriated these funds to finance his "lavish lifestyle."  Roberts is also alleged to have falsely obtained a guarantee by the plaintiffs of the debts of HARC Financial 44-01 LLC ("HARC Financial"), a company Roberts owned.  According to the plaintiffs, Roberts attracted investors to HARC Financial by guaranteeing a 16% rate of return, but absconded with the investors' money.  Roberts thereby allegedly left the plaintiffs liable for his debts to the investors.  The plaintiffs assert that as a result of these actions, Roberts breached the fiduciary duty he owed to the plaintiffs as a business partner, and also defrauded the plaintiffs.

The plaintiffs further allege that First Bank, Wachovia, Deutsche Bank, and Pacific Mercantile aided and abetted the breach of fiduciary duty and commission of fraud by Roberts by allowing him to draw on lines of credit and transfer money with "no questions asked."  According to the plaintiffs, these defendants failed to respond to "red flags" that should have told them that Roberts did not represent the plaintiffs and was carrying out a massive fraud.  The plaintiffs have since withdrawn these claims against Deutsche Bank and Pacific Mercantile, but they remain pending against First Bank and Wachovia.  (First Bank and Wachovia are thus hereinafter collectively referred to as the "Bank Defendants".)

The FAC also alleges that there existed loan agreements between Harvey Silverman and Silverman Partners, on the one hand, and each of First Bank and Wachovia, on the other hand.  The plaintiffs do not allege whether these loan agreements formed valid contracts between the parties.  Although the documents

appear to bear Harvey Silverman's signature, the plaintiffs do not allege whether Harvey Silverman actually signed them.  However, the plaintiffs do assert that, if the contracts were valid, the Bank Defendants each breached the relevant loan agreements by, among other things, allowing Roberts to improperly borrow money against the credit lines.

The FAC also names Sheri Grady-Merkle ("Grady") as a defendant for the first time, and alleges that she aided and abetted the fraud and breach of fiduciary duty by Roberts.  According to the plaintiffs, Grady assisted Roberts in obtaining funds from the Bank Defendants and also assisted him in raising funds for HARC Financial.  The plaintiffs further allege that Grady was aware of the improper purposes by Roberts at the time that she helped to open these accounts and attract investors.  The FAC also alleges that Grady was assisted in this by Wealth Guard, an entity that Grady controls.

On July 16, 2009, First Bank moved to dismiss all claims against it in the FAC for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  On August 31, 2009, Grady and Wealth guard also moved to dismiss the claims against them on the same grounds.  On September 9, 2009, Wachovia did the same, and also moved to provisionally strike the plaintiffs' jury demand.  On September 14, 2009, Roberts moved to dismiss or stay the claims against him in the FAC in favor of an action he had filed in the Federal District Court for the Southern District of Florida.  That action addresses the same nexus of facts addressed in the present case.  The Roberts action was filed after the plaintiffs' original complaint was filed, but before the plaintiffs

joined him as a defendant in the FAC.  These motions remain pending and are all opposed by the plaintiffs.

On November 20, 2009, the plaintiffs moved by order to show cause for (1) attachment assets of Roberts, (2) a preliminary injunction enjoining Roberts from acting on behalf of or with the authority of the plaintiffs, and enjoining Roberts from running the day-to-day operations of any Limited Liability Corporations ("LLCs") in which the plaintiffs and Roberts share an interest, (3) expedited discovery, and (4) an accounting of the LLCs that Roberts controls and in which the plaintiffs invested.  The Court heard argument on the order to show cause the same day it was filed.  At that time, the Court referred the parties to United States Magistrate Judge William D. Wall for expedited discovery; provisionally denied an order of attachment; and reserved decision on the other pending issues.  Roberts opposes all the remaining requests in the order to show cause.

On December 8, 2009, the plaintiffs filed a motion to amend their complaint. Pursuant to the applicable rules, in connection with this motion the plaintiffs submitted a Proposed Second Amended Complaint ("PSAC").  The PSAC alleges seventeen causes of action, including a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*  The PSAC also adds sixteen new defendants, primarily comprising entities owned or controlled by Roberts and other alleged associates of Roberts.

The PSAC alleges essentially the same scheme alleged in the FAC, although it states in greater detail the alleged transfers of money by Roberts among the bank

accounts he held and the entities he controlled.  Also unlike the FAC, the PSAC
explicitly alleges that the plaintiffs' signatures on certain loan-related documents for
First Bank and Wachovia were forged or obtained by Roberts through fraud.  In
addition, the PSAC includes allegations relating to lines of credit at several other banks,
including Citibank, Bank of America, Orion Bank, Pacific Mercantile Bank, and
Deutsche Bank.  Roberts is alleged to have improperly drawn funds in the plaintiffs'
names at these banks.  However, the PSAC does not name any of these banks as
defendants.

 With respect to defendants Grady and Wealth Guard, the PSAC largely alleges
the same facts that were alleged in the FAC, but also names as a defendant Werner
Grady Associates, LLC ("Werner Grady Associates").  Werner Grady Associates is
allegedly controlled by Grady and has the same liability in the present case as does
Wealth Guard.

 Wachovia and First Bank oppose the plaintiffs' motion to amend based on,
among other contentions, their argument that the PSAC still fails to state a valid claim
against them and that, therefore the amendment is futile.  Roberts also opposes the
amendment because he maintains that the claims against him should be stayed or
dismissed in favor of the related action he filed in Florida.  Grady and Wealth Guard
have not filed opposition papers to the plaintiffs' motion to amend.

 The Court first considers the plaintiffs' motion to amend, as its determination
will directly impact the Court's resolution of the motions to dismiss by First Bank,
Wachovia, Grady, and Wealth Guard.  The Court will then directly address these

motions.  The Court will next consider the motion by Roberts to stay or dismiss based on the related action pending in Florida, and, finally, the Court will address the plaintiffs' pending requests for provisional relief.

## II. DISCUSSION

### A. As to the Plaintiffs' Motion to Amend

#### 1. Legal Standards

The plaintiffs are moving to amend their complaint pursuant to Fed. R. Civ. P. 15(a), which provides in pertinent part:

> [A] party may amend its pleading only with . . . the court's leave.
> The court should freely give leave when justice so requires.

Generally, the Court may deny leave to amend only as a result of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008).  However, "'[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend.'"  Ruotolo, 514 F.3d at 191 (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981)).

In determining futility of amendment, the Court applies the same standard used to decide a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002); Baron v.

<u>Complete Management, Inc.</u>, 260 Fed.Appx. 399, 400–01, (2d Cir. 2008) (applying the <u>Twombly</u> summary judgment standard in deciding amendment futility). Under the now well-established <u>Twombly</u> standard, a complaint amendment would be futile only if the amended complaint would not contain enough allegations of fact to state a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after <u>Twombly</u>, the Court's inquiry under Rule 12(b)(6) is guided by two principles. <u>Harris v. Mills</u>, 572 F.3d 66 (2d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." <u>Iqbal</u>, 129 S. Ct. at 1950.

**2. As to the Causes of Action Asserted Against First Bank**

In the PSAC the plaintiffs assert four causes of action against defendant First Bank: (1) negligence, (2) breach of contract, (3) unjust enrichment, and (4) "declaratory

judgment".  First Bank opposes the amendment of the FAC, first, on the ground that the plaintiffs seek amendment with the bad faith motive of avoiding the payment of their debts to First Bank.  It also asserts that the amendment would be futile for failure to state a claim.  The Court finds that the amendment as to First Bank would be futile, and the Court therefore need not address First Bank's argument with regard to improper motive.

### a. Relevant Alleged Facts

The plaintiffs allege in the PSAC the following facts with respect to First Bank, and the Court accepts them as true for the purposes of the plaintiffs' motion to amend. The plaintiffs assert that, on February 24, 2006, First Bank issued a $15 million line of credit to Harvey Silverman, Silverman Partners, and Roberts.  The relevant agreement has been previously incorporated by reference in this action, and bears what appears to be Harvey Silverman's signature.  However, according to the plaintiffs, Mr. Silverman was unaware of this agreement, and his signature was "either forged or obtained through fraud or artifice at one of the many social call[s][] staged by Roberts at Mr. Silverman's New York home."  (PSAC, ¶ 211.)

The plaintiffs allege that First Bank entered into this agreement "without following any of First Bank's internal policies or federal anti-money laundering or 'know your customer' regulations or guidelines," (PSAC, ¶ 200), and without "a formal application . . . underwriting . . . [a] background check or due diligence," (PSAC, ¶¶ 203–05).  The line of credit was collateralized by seven entities that Roberts or Silverman controlled or owned, and, allegedly, First Bank did no diligence on these

entities.  The plaintiffs allege that all of this was done because First Bank officer Donna Owen was acting at the behest of defendant Grady, with whom Owen was "close friends."  (PSAC, ¶ 198.)  The plaintiffs assert that, apparently based solely on this friendship, "Owen knew or should have known that the line of credit [that Roberts was obtaining from First Bank] was being obtained through fraudulent and unlawful means."  (PSAC, ¶ 199.)

The loan agreement provides that the proceeds of the loans were to be used only for investments in certain named entities, or for entities that First Bank later approved, and that they were also to be used "for commercial purposes only."  Also, the borrowers were obligated to provide to First Bank documentation concerning the purpose for the funds prior to disbursement.  The plaintiffs also assert that the agreement requires that the entities guaranteeing the loans must provide First Bank periodic financial and operations information.  According to the plaintiffs, First Bank never enforced any of these provisions.

On February 27, 2007 First Bank increased the credit limit on the loan to $20 million.  The document effecting this amendment bears what appears to be Harvey Silverman's signature, but the plaintiffs again assert that this signature was "either forged or obtained through fraud or artifice."  (PSAC, ¶ 235.)  On October 1, 2007, the credit line was once more increased to $30 million by a document bearing what again appears to be Harvey Silverman's signature.  The plaintiffs assert that this signature was also forged or obtained through "fraud or artifice."  (PSAC, ¶ 245.)  The terms of these agreements were otherwise materially identical to the original loan agreement,

except that they included additional requirements for the borrowers to deliver certain financial statements to First Bank.  Again, First Bank allegedly did not enforce these provisions.

On March 2, 2006, First Bank allegedly disbursed $15 million to Roberts.  On March 8, 2007, First bank advanced another $5 million to Roberts pursuant to the increase in the loan agreement.  On September 17, 2007, Roberts allegedly paid down $8 million of the outstanding debt to First Bank using funds received from loans issued by Deutsche Bank and Citibank.  On October 11, 2007, Roberts re-drew this $8 million from First Bank and used $4 million to pay down the lines of credit from Deutsche Bank and Citibank.  On March 3, 2008, August 4, 2008, and November 3, 2008, Roberts drew again on the First Bank line of credit, totaling another $3.5 million.

On December 11, 2008, First Bank notified Harry Silverman that he had defaulted on the First Bank loan and requested accelerated payment from him, as well as updated financial statements.  On February 24, 2009, Harry Silverman provided updated financial statements to First Bank.  According to the plaintiffs, First Bank officer Donna Owen then provided a copy of these statements to defendant Grady "despite the confidentiality provisions of the First Bank loan documents."  (PSAC, ¶ 287.)  The plaintiffs allege that during the loan period, First Bank "received significant fees and interest."  (PSAC, ¶ 643.)

### b. Legal Principles and Analysis

The plaintiffs allege that the above-described acts constitute breach of contract, unjust enrichment, and negligence on the part of First Bank.  The plaintiffs also assert

that they are entitled to a declaratory judgment that they are not obligated to repay any borrowed funds to First Bank or any related fees and interest.

### i. Breach of Contract

As a first issue, the Court finds that the plaintiffs have not stated a claim for breach of contract against First Bank. The First Bank loan agreements are governed by California law, which, similar to New York law, provides that to plead a breach of contract, a plaintiff must allege, "a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1489 (Cal. App. 2d Dist. 2006). Here, the plaintiffs allege that First Bank breached the contract by failing to obtain financial and other documentation that the borrowers were obligated to provide. The plaintiffs also allege that First Bank breached the loan agreement by failing to ensure that the loaned funds were used as directed in the loan agreement.

This argument is contrary to the basic tenets of contract law. The provisions the plaintiffs cite to obligate the borrowers to take certain actions. First Bank's alleged failure to enforce these provisions is not a breach of its contract. In addition, to the extent the plaintiffs assert that Owens' disclosure of the plaintiffs' financial statements to Grady breached the loan agreement, the plaintiffs do not identify, and the Court is unaware of, any provision of the agreements that prohibits this conduct. The plaintiffs' breach of contract claim against First Bank is therefore dismissed.

### ii. Unjust Enrichment

The Court also finds that the plaintiffs' claim for unjust enrichment fails to state a viable cause of action.  To prove a claim of unjust enrichment, the plaintiff must show "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff."  Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001).  However, where a valid contract governs the obligations between parties, no claim for unjust enrichment will stand.  See In re First Central Financial Corp., 377 F.3d 209, 214, n. 4 (2d Cir. 2004) (citing cases).

Here, the plaintiffs have pled two alternative theories, as permitted by the Federal Rules of Civil Procedure.  The first theory is that there is an enforceable contract between the plaintiffs and First Bank, but that pursuant to the bank's alleged malfeasance, they have been unjustly enriched by the fees and interest they have collected from the plaintiffs under the loan agreement.  However, under this theory, a claim for unjust enrichment will not stand, because a valid contract governs the dispute.

The second theory is that there is no valid contract between the parties because Harvey Silverman's signature on the relevant documents was forged or "obtained by fraud or artifice".  However, under this theory, First Bank has no recourse to recover any funds from the plaintiffs because the loan agreements would be invalid.  Therefore, under this theory, First Bank has merely asserted that the plaintiffs owe it fees and

14

interest, but has no basis to collect these monies.  In that case, First Bank cannot be said to be unjustly enriched.

To the extent that the plaintiffs allege under this second theory that First Bank has been unjustly enriched by fees actually paid to it by the plaintiffs, the Court finds this to be implausible.  Pursuant to the second theory of liability, the plaintiffs allege that Harvey Silverman never knowingly signed the loan agreements and "was unaware" of their existence.  (PFAC, ¶¶ 212, 236, 246.)  To claim that the plaintiffs paid fees and interest to First Bank pursuant to this loan, while unaware of its existence, is not plausible.  The Court thus finds that the PSAC does not state a claim for unjust enrichment against First Bank under any theory.

### iii. Negligence

The Court also finds that the PSAC does not state a claim for negligence against First Bank.  To prove negligence, a party must show the existence of a duty, breach of that duty, causation, and damages.  See, e.g., Chylinski v. Wal-Mart Stores, Inc., 150 F.3d 214, 218 (2d Cir.1998).  Generally, courts have held that banks do owe a duty of care to their customers.  See, e.g., King v. Crossland Sav. Bank, 111 F.3d 251, 259 (2d Cir. 1997).  Here, the plaintiffs allege that First Bank breached its duty of care by failing to properly investigate the activities and background of Roberts, both before lending to him and after he began withdrawing funds on the line of credit.  The plaintiffs argue that federal law and First Bank's internal policies require First Bank to perform diligence on customers to prevent fraud, and that First Bank's failure to do this with respect to Roberts caused harm to the plaintiffs.

15

As a preliminary matter, the Court finds that no claim for negligence will stand on the plaintiffs' theory that no valid contract existed between First Bank and the plaintiffs. Generally, banks owe no duty of care to their non-customers.  The sole case that the plaintiffs cite to for the existence of a bank's duty of care to non-customers is explicitly restricted to its facts, and relates to a bank's duty to act when an individual attempts to negotiate in her own favor a check made out to the bank.  Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., 49 Cal.App.4th 472, 480 (Cal.App.1.Dist) (describing Sun 'n Sand, Inc. v. United California Bank, 21 Cal.3d 671 (Cal. 1978)).

Insofar as the plaintiffs allege the existence of a valid contract with First Bank, the analysis differs.  Nevertheless, while the Court agrees that the First Bank owes certain duties of care to its customers, the Court finds that First Bank did not owe the plaintiffs a duty to investigate the background or transactions of Roberts.

Assuming, as the Court must, that a valid contract existed between the plaintiffs and First Bank, Roberts—also a signatory on the promissory notes—was presented to First Bank as the plaintiffs' co-borrower.  As a basic principle, it would be anomalous for a bank to be required to investigate the bona fides of all borrowers on a loan *for the benefit of the other borrowers*.  In In re Sharp Intern. Corp., 302 B.R. 760 (E.D.N.Y. 2003), the court dealt with a related issue.  There, a corporation alleged that its lender knew or should have known from its records that the corporation's largest shareholder was defrauding the corporation on a large scale.  Id. at 765–66.  The corporation alleged that, in spite of this, the lender had done nothing to inform the corporation of

this fraud, and was therefore liable for aiding and abetting the shareholder's breach of fiduciary duty.  Id.

      The bankruptcy court in which the claim was asserted disagreed, as did the district court that reviewed the decision.  The district court stated that "the law imposes no affirmative duty on a bank to act when it learns that its borrower is committing a fraud since one does not wish to discourage lenders from conducting investigations of their borrowers."  Id. at 776, n. 7.  While the court in In re Sharp addressed banks' duties of care in the context of a breach of fiduciary duty claim, its discussion of the duty owned by banks to customers to report fraud is directly relevant to the present case.

      Here, Harvey Silverman and Silverman Partners were co-borrowers with Roberts, listed explicitly as jointly and severally liable for their borrowed debts.  Both Silverman and Roberts also had the right to draw on the loan.  The thrust of the plaintiffs' claim is that First Bank negligently failed to investigate the background of Roberts and negligently failed to inform the plaintiffs that their co-borrower was misusing funds drawn from their account.  However, the plaintiffs ultimately present no law that establishes a bank's duty to a customer to investigate the good faith representations of his or her business partner, or to track a co-borrower's transactions to prevent fraud.  The Court finds that no such duty exists.

      The plaintiffs nevertheless argue that federal law, including the USA PATRIOT Act and First Bank's "know your customer" internal practices, create duties to

investigate customers' backgrounds.  The plaintiffs argue that First Bank's failure to follow these rules gives rise to a negligence claim.

This argument misstates the traditional relationship between statutory law and the common law duty of care.  While statutes and other rules of conduct may be used to inform what constitutes a reasonable standard of care in a given situation, the rules only do so to the extent they were created to protect the complainant.  Rest. 2d of Torts, § 286.  Here, the laws and rules cited by the plaintiff are intended to protect the banks and the general public from harm.  They were not created to protect borrowers from harm done by co-borrowers.  These rules therefore cannot form the basis for a negligence claim in this case.

### iv. Declaratory Judgment

Finally, the plaintiffs request a declaratory judgment that they are not liable to First Bank for any part of the debt Roberts allegedly borrowed from First Bank in the plaintiffs' name.  The Court finds that this relief would not be proper.  Currently pending before United States District Judge Sandra Feuerstein is a previously-filed action brought by First Bank to recover on this debt, and that action will determine this issue.  As the relevant issues will necessarily be addressed in the action presently pending before Judge Feuerstein, the Court finds that amendment of the PSAC to state an action for declaratory judgment would also be futile.

### 3. As to the Causes of Action Asserted Against Wachovia

#### a. Relevant Alleged Facts

The PSAC alleges that, on July 23, 2004, Harvey Silverman executed a promissory note with Wachovia, creating a credit line of $2 million against which both Harvey Silverman and Silverman Partners—though not Roberts—could borrow.  This credit line was increased to $3 million on July 23, 2005, and $5 million on August 8, 2006.  Both increases were effected by promissory notes similar to the July 23, 2004 promissory note, and both appear to bear Harvey Silverman's notarized signature.  The plaintiffs allege that they were "unaware of [these] increases," and that they "did not authorize" them.  (PSAC, ¶¶ 118–19.)  Each of the promissory notes provided that the proceeds of the loans would be used for business investments, and that the note could not be modified to "increase[] the burdens of a Borrower without the consent of the Borrower."  (PSAC, ¶ 113.)  The notes also provided that no waivers or amendments could be made to the agreement unless in writing and signed by an officer of Wachovia.

The plaintiffs allege that, over the course of the term of this line of credit, Wachovia allowed Roberts to open at least 30 accounts with Wachovia, both in his name and in the name of entities he owned or controlled.  Unlike the First Bank line of credit, the Wachovia loan was in the name of Harvey Silverman and Silverman Partners only, and did not name Roberts as a borrower.  The plaintiffs allege that, nevertheless, on June 8, 2007, Wachovia allegedly advanced $3.85 million from the Silverman credit line to one of the accounts that Roberts held at Wachovia.

After this advance, Roberts then allegedly presented Wachovia with a power of attorney dated June 12, 2007, and bearing what appears to be Harvey Silverman's signature. This power of attorney appeared to grant Roberts power to borrow funds under the Silverman credit line, although it did not appear to explicitly allow the June 8, 2007 transfer. The plaintiffs allege that Harvey Silverman's signature on the power of attorney "was either forged or procured thorough fraud or artifice," (PSAC, ¶ 146), and point out that the notary seal on the power of attorney appears on a different page than Harvey Silverman's signature. The plaintiffs also note that the power of attorney appears to be for Harvey Silverman in his individual capacity, and not for Silverman Partners.

According to the plaintiffs, Wachovia should have investigated Roberts and the authenticity of the power of attorney before advancing loan money to his accounts, but failed to do so. The plaintiffs further allege that Roberts presented the power of attorney only in response to Wachovia's request for a document that would help it to "cover up its gross negligence and reckless indifference" that it had committed by advancing funds to Roberts on July 8, 2007. (PSAC, ¶ 141.)

The plaintiffs also allege that Wachovia should have been put on notice as to Roberts' alleged malfeasance by numerous transactions, totaling "hundreds of millions of dollars" among the accounts he held at Wachovia. (PSAC, ¶ 159.) In support of this contention, the plaintiffs allege a long list of transfers of money between various accounts, both at Wachovia and at other banking institutions.

According to the plaintiffs, they did not authorize any of the withdrawals by Roberts on the credit line, and Wachovia never sent them any statements recording these transactions.  The plaintiffs also allege, upon information and belief, that senior managers at Wachovia were aware of Roberts's malfeasance, but took no actions so as to conceal Wachovia's role in facilitating Roberts's unlawful conduct.  The plaintiffs further allege that, in addition to these improprieties, Wachovia received "significant fees and interest payments as a result of Roberts' banking activities."  (PSAC, ¶ 187.)

On January 15, 2009, Wachovia demanded payment of the loan's outstanding balance of approximately $5 million from Harvey Silverman and Silverman Partners.  On April 28, 2009, Wachovia declared Harvey Silverman and Silverman Partners to be in default on the debt.

### b. Legal Principles and Analysis

As with First Bank, the plaintiffs allege similar claims for breach of contract, negligence, and unjust enrichment against Wachovia, and seek a declaratory judgment that they are not liable to Wachovia with regard to the promissory notes.  In addition, the plaintiffs also allege that Wachovia (1) aided and abetted Roberts's commission of fraud, (2) aided and abetted Roberts's violation of his fiduciary duties, (3) is liable for conversion, and (3) violated the civil RICO provisions.  On the other hand, Wachovia maintains that the plaintiffs have not stated a claim for any of these causes of action, and asserts that any amendment of the plaintiffs' complaint would be futile.

### i. Negligence

Initially, the Court finds that the PSAC states a claim for negligence with regard to the alleged withdrawal of $3.85 million by Roberts from the Wachovia credit line on June 8, 2007. As discussed above, banks do owe a duty of care to customers. In the Court's view, a bank plainly has a duty not to advance proceeds from a customer's loan to a person who is not authorized to receive those funds. Wachovia's alleged advance to Roberts on June 8, 2007 is plausibly a breach of this duty.

The Court similarly finds that the plaintiffs have stated a claim for negligence with respect to Wachovia's acceptance of the putative power of attorney and the advancement of other funds to Roberts based on this document. The plaintiffs allege that Roberts presented Wachovia with the putative power of attorney after Wachovia had already advanced funds to Roberts, and that Wachovia never contacted the plaintiffs to verify its validity. While the Court is not especially concerned by the fact that the notarization of the power of attorney appears on a different page than Harvey Silverman's purported signature, the Court finds that, taking the pleading in the best light for the plaintiffs, the PSAC states a plausible claim for negligence against Wachovia based on these allegations. See, e.g., Olmeca, S.A. v. Manufacturers Hanover Trust Co., 629 F.Supp. 214, 220 (S.D.N.Y. 1985) (holding that a bank could be liable for accepting a suspicious and ultimately invalid power of attorney).

However, the Court finds that the PSAC does not state a claim for negligence with respect to Wachovia's alleged general failure to investigate Roberts' background and his use of accounts at Wachovia. Here, Wachovia owed Harvey Silverman and

Silverman Partners a duty of care with respect to the management of their line of credit. However, Wachovia did not owe the plaintiffs a separate duty of care with respect to the monitoring the other accounts of Roberts at Wachovia.  The PSAC therefore does not state a cause of action based on a claim of Wachovia's negligence in failing to generally monitor and report on the actions of Roberts with respect to his other Wachovia accounts.

### ii. Breach of Contract

The Court also finds that the PSAC states a claim for breach of contract with respect to Wachovia's alleged improper advances to Roberts.  To be sure, nothing in the contract explicitly prohibits Wachovia from advancing funds to individuals other than Harvey Silverman and Silverman Partners.  However, Wachovia's alleged improper advances to Roberts at least arguably affected Wachovia's contractual obligation to extend to Harvey Silverman and Silverman Partners the full amount of the promised credit.  Wachovia's failure to extend the full line of credit would be a breach of the credit agreement, and taking the pleading in the best light for the plaintiffs, the Court finds that this is at least implicitly alleged.

Nevertheless, the PSAC does not state a claim for breach of contract with respect to any other performance by Wachovia.  For substantially the same reasons discussed above with respect to the breach of contract claim against First Bank, Wachovia cannot be said to have breached the promissory notes by failing to request more background information from the borrowers, or by failing to insure that the loan

proceeds were used as required.  These are obligations of the borrowers, and Wachovia's failure to enforce them is not a breach of its contract.  The claim thus fails.

### iii. Unjust Enrichment

Also, the Court finds that the PSAC does not state a claim for unjust enrichment.  Here, a valid contract controls between the parties, and the alleged improper amendments to that agreement notwithstanding, the plaintiffs' unjust enrichment claim must be dismissed.

### iv. Declaratory Judgment

In addition, the Court finds that the plaintiffs' request in the PSAC for a declaratory judgment regarding their debt to Wachovia is inappropriate.  Wachovia has filed an action in New York State Supreme Court, New York County, seeking to recover on this debt, and that court's determination in that case will resolve the dispute between the parties on this issue.

### v. Aiding and Abetting Fraud

The plaintiffs also allege that Wachovia aided and abetted in the commission of fraud by Roberts.  In order to survive Wachovia's challenge, the plaintiffs' fraud allegations must meet the requirements of Fed. R. Civ. P. 9(b) ("Rule 9(b)").   The heightened pleading standard contained in Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Rule 9(b) permits "[m]alice, intent, [and] knowledge," to be averred generally.  Fed. R. Civ. P. 9(b).  However, because courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a

license to base claims of fraud on speculation and conclusory allegations[,] . . .

plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."

Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks

and citation omitted).  A strong inference of fraud "may be established either (a) by

alleging facts to show that defendants had both motive and opportunity to commit

fraud, or (b) by alleging facts that constitute strong circumstantial evidence of

conscious misbehavior or recklessness."  Shields v. Citytrust Bancorp, Inc., 25 F.3d

1124, 1128 (2d Cir. 1994).

      In this context, recklessness is established by alleging conduct which is "'highly

unreasonable and which represents an extreme departure from the standard of ordinary

care . . . to the extent that the danger was either known to the defendant or so obvious

that the defendant must have been aware of it.'"  Chill v. General Elec. Co., 101 F.3d

263, 269 (2d Cir. 1996) (quoting Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47

(2d Cir. 1978)).  Ultimately, a plaintiff carries a "significant burden . . . in stating a

fraud claim based on recklessness."  Id. at 270.

      In New York, to establish a claim of aiding and abetting fraud, a plaintiff must

allege (i) the existence of a violation by the primary wrongdoer; (ii) knowledge of this

violation by the aider and abettor; and (iii) proof that the aider and abettor substantially

assisted in the primary wrong.  Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983).

      Wachovia asserts that the PSAC fails to allege in sufficient detail that they aided

and abetted fraud.  The Court agrees.  New York law requires a plaintiff to establish

that the aider and abettor had *actual knowledge* of the alleged wrongdoing.  Lerner, 459

25

F.3d at 292 (citations omitted); see Wight v. Bankamerica Corp., 219 F.3d 79, 91 (2d Cir.2000) (observing that "knowledge of the underlying wrong" is a "required element" under New York law).  Rule 9(b) therefore requires the plaintiffs to allege facts that give rise to a strong inference that Wachovia had actual knowledge of the alleged fraud by Roberts.

Here, the plaintiffs allege that Wachovia should have been put on notice that Roberts was committing fraud based on the multiple accounts he opened at Wachovia and the transfers between these accounts.  However, while the plaintiffs allege the details of many transfers between these accounts, they fail to set forth anything that is particularly suspicious.  Moreover, even if a reasonable banker would have viewed the actions by Roberts as raising "red flags," this is not sufficient to give rise to a strong inference of actual knowledge of the fraud.  See In re Agape Litigation, 09-CV-1606 (ADS)(AKT), 09-CV-1782 (ADS)(AKT), 09-CV-1436 (ADS)(AKT), --- F.Supp.2d ----, 2010 WL 335621 (E.D.N.Y. Jan. 29, 2010) (Spatt, J.) (holding that allegations that defendant Bank of America operated a branch out of the office of the alleged perpetrator of a fraud, for his benefit, did not give rise to a strong inference of actual knowledge of the fraud); Nigerian Nat'l Petroleum Corp. v. Citibank, N.A., No. 98-CV-4960, 1999 WL 558141, at *7 (S.D.N.Y. July 30, 1999) (allegations that a bank knowingly or recklessly disregarded several "badges of fraud" in accounts involving millions of dollars did not give "rise to an inference, let alone a 'strong inference,' that the bank actually knew of, and participated in" the fraud).

### vi. Aiding and Abetting a Breach of Fiduciary Duty and Conversion

In light of these findings by the Court, the plaintiffs' claims for aiding and abetting breach of fiduciary duty and conversion must also fail.  As with a claim for aiding and abetting fraud, claims for aiding and abetting a breach of fiduciary duty and conversion each require allegations of actual knowledge of the principal's breach.  See In re Agape Litigation, 2010 WL 335621 at *12; Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC, 446 F.Supp.2d 163, 201 (S.D.N.Y.2006) (collecting cases); Kirschner v. Bennett, 648 F.Supp.2d 525, 533 (S.D.N.Y. 2009).  In addition, because the underlying wrong with respect to both claims is fraud, this must also be alleged with particularity pursuant to Rule 9(b). See O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991); Henneberry v. Sumitomo Corp. of America, 532 F.Supp.2d 523, 555 (S.D.N.Y. 2007) (holding that Rule 9(b) applied to breach of fiduciary duty claim premised on alleged fraudulent actions); Daly v. Castro Llanes, 30 F.Supp.2d 407, 414 (S.D.N.Y. 1998) (holding the same for a conversion claim premised on alleged fraudulent actions).  Here, as discussed above, the plaintiff has not alleged facts that support a plausible inference of actual knowledge by Wachovia that Roberts was committing the underlying alleged fraud, and therefore the Court dismisses the plaintiffs' claims for aiding and abetting fraud, aiding and abetting a breach of fiduciary duty, and conversion.

**vii. Civil RICO**

The plaintiffs also allege that Wachovia's conduct as described above violated the RICO civil provisions.  RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ."  18 U.S.C. § 1962(c).  Section 1962(d) makes it unlawful to conspire to violate Section 1962(c).

As with other claims derivative of an underlying alleged fraud, a RICO claim under Section 1962(c) or Section 1962(d) that is predicated on underlying fraudulent acts must be plead with specificity pursuant to Rule 9(b).  See Moore v. PaineWebber, Inc., 189 F.3d 165, 172–73 (2d Cir. 1999).  A plaintiff is thus required to "allege facts that give rise to a strong inference of fraudulent intent" when alleging this type of RICO claim.  San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 812 (2d Cir.1996).

Here the predicate acts that underlie the plaintiff's RICO claim are fraudulent. Therefore, the Rule 9(b) specificity requirements apply.  As discussed above, the plaintiff has not alleged facts that give rise to a strong inference of Wachovia's fraudulent intent.  Thus, the plaintiff's RICO claim against Wachovia cannot succeed and would be futile.

**4. As to the Causes of Action Against Grady and Wealth Guard**

In the PSAC, the plaintiffs allege causes of action for aiding and abetting fraud, conversion, and breach of fiduciary duty against Grady, Wealth Guard, and Werner

Grady Associates, LLC ("Werner Grady Associates", and collectively, the "Grady Defendants").  The plaintiffs also allege that the Grady Defendants violated RICO, and have been unjustly enriched.  The FAC names only Grady and Wealth Guard as defendants, and alleges only aiding and abetting fraud and breach of fiduciary duty.  Grady and Wealth Guard have moved to dismiss the claims asserted against them in the FAC, but have not opposed the plaintiffs' present motion to amend.  However, in light of Grady and Wealth Guard's pending motion to dismiss, the Court scrutinizes the plaintiffs' claims against the Grady Defendants in the PSAC for futility.

### a. Relevant Alleged Facts

The PSAC alleges that L. Sheri Grady was a business associate of Roberts, and that she controlled both Wealth Guard and Werner Grady Associates.  According to the plaintiffs, the Grady Defendants played two roles in the alleged scheme by Roberts.  First, the plaintiffs allege that Roberts "retained [the Grady Defendants] to use Grady[]'s personal contacts at First Bank to facilitate a loan without questions asked." (PSAC, ¶ 16.)  For this service, Roberts allegedly paid the Grady defendants "almost $800,000" out of the proceeds of the First Bank loan.  Roberts then later allegedly paid the Grady defendants $600,000 "for services rendered in aid of Roberts' fraud."  (Id.) The plaintiffs allege that the Grady Defendants "knew or should have known that the line of credit [obtained from First Bank] was being obtained through fraudulent and unlawful means."  (PSAC, ¶ 197.)

Second, the plaintiffs allege that Roberts retained the Grady Defendants "to raise equity investments for HARC Financial," an entity that Roberts allegedly

controlled and that ostensibly was to be used to finance real estate investments.

(PSAC, ¶ 359.)  According to the PSAC, Roberts "did not intend to use the investments

generated by HARC Financial for purposes related to Plaintiffs' real estate

investments."  (PSAC, ¶¶ 361.)  The plaintiffs further allege that the Grady defendants,

"by virtue of their ongoing relationship with Roberts, knew or should have known that

[the HARC Financial transactions were] part of a fraudulent scheme."  (PSAC, ¶¶ 362.)

### b. Legal Principles and Analysis

#### i. Aiding and Abetting Fraud, Aiding and Abetting a Breach of Fiduciary Duty, Conversion, and Unjust Enrichment

As discussed above, Fed. R. Civ. P. 9(b) requires that the plaintiffs allege fraud

with specificity.  While the knowledge element of fraud need not be pled with the same

level of specificity required for other elements, the plaintiffs must allege specific facts

that give rise to a strong inference of knowledge of the fraud.  Acito, 47 F.3d at 52.

Also as discussed above, the heightened pleading standards of Rule 9(b) apply to torts

that are premised on the defendant's alleged fraudulent actions.  See O'Brien, 936 F.2d

at 676.  Thus, breach of fiduciary duty, conversion, and unjust enrichment must be pled

with specificity when the underlying acts are allegedly fraudulent.  See, e.g., Welch v.

TD Ameritrade Holding Corp., No. 07-cv-6904(RJS), 2009 WL 2356131, *21

(S.D.N.Y. July 27, 2009) (holding that Rule 9(b) applied to unjust enrichment claim

premised on alleged fraudulent actions); Henneberry, 532 F.Supp.2d at 555 (holding

the same for breach of fiduciary duty claim premised on alleged fraudulent actions);

Daly, 30 F.Supp.2d at 414 (holding the same for conversion claim premised on alleged fraudulent actions).

Here, the acts that underlie the claims for aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and unjust enrichment are fraudulent acts, as each is ultimately premised on the alleged attempt by Roberts to mislead the plaintiffs in order to abscond with their money. Therefore, the Rule 9(b) pleading standard applies to all three of these claims, as well as the plaintiffs' aiding and abetting fraud claim. Further, as each of these claims require a knowledge element, the plaintiffs must allege facts that give rise to a strong inference that the Grady Defendants had knowledge of the underlying fraud by Roberts.

The Court finds that the PSAC does not sufficiently allege these facts. First, the plaintiffs' conclusory allegation of the Grady Defendants' knowledge of the alleged wrongs by Roberts is insufficient to surmount the pleading requirements. As for actual facts alleged, the plaintiffs do assert that the Grady Defendants caused First Bank to issue a line of credit "without following any of First Bank's internal policies or federal anti-money laundering or 'know your customer' regulations or guidelines." (PSAC, ¶ 200.) However, even coupled with the plaintiffs' allegation that the Grady Defendants were compensated for this act, this does not give rise to a strong inference that the Grady Defendants had actual knowledge of the alleged underlying fraud by Roberts. Similarly, the plaintiffs' bare allegations that the Grady Defendants raised funds for the Roberts fraudulent investment vehicle do not give rise to a strong inference that they were aware of his fraudulent actions. Failing to sufficiently allege these facts, the

31

PSAC does not state a claim against the Grady Defendants for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and unjust enrichment.

### ii. Civil RICO

In addition, for reasons similar to those discussed above with respect to Wachovia, the plaintiffs' RICO claim against the Grady Defendants is insufficient to plead a cause of action. A RICO claim that is based on underlying fraudulent actions must be plead with specificity. Moore, 189 F.3d at 172–73. This includes a requirement to allege facts giving rise to a strong inference of fraudulent intent. San Leandro, 75 F.3d at 812. Here, the underlying predicate acts are fraudulent, and the specificity requirement therefore applies. As described above, the plaintiffs have not alleged facts that support a strong inference of the Grady Defendants' intent to defraud. The plaintiffs' RICO claim against the Grady Defendants would therefore be futile.

### 5. As to the Causes of Action Asserted Against Marc Roberts

The plaintiffs assert a number of new facts concerning Roberts in the PSAC, as well as new causes of action, including conversion, unjust enrichment, and violations of the Florida Uniform Fraudulent Transfers Act, Fl. St. § 726.101, *et seq.* Roberts has not moved to dismiss the claims in the FAC on their merits, nor has he opposed the claims asserted in the PSAC on their merits. Rather, Roberts has moved to stay or dismiss all claims against him pending the outcome of a related matter currently pending in Florida. As discussed below, this motion is denied. In light of the fact that Roberts has not opposed the proposed amendments on their merits, and for the sole

purpose of this motion to amend, the Court finds sufficient facts plead by the plaintiffs.

Accordingly, the Court grants the plaintiffs' motion for leave to amend with respect to

the causes of action asserted in the PSAC against Roberts.

### 6. As to the Newly Named Defendants

The plaintiffs' motion to amend implicitly includes a motion pursuant to Fed. R.

Civ. P. 20 to add an additional sixteen defendants not named in the FAC.  Rule 20

provides in pertinent part:

> (2) Defendants. Persons . . . may be joined in one action as
> defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or
> in the alternative with respect to or arising out of the same
> transaction, occurrence, or series of transactions or occurrences;
> and
>
> (B) any question of law or fact common to all defendants will arise
> in the action.

Here, the plaintiffs seek to add (1) Marci Roberts, Marc Roberts's wife, (2)

Debra Slifkin, an employee and associate of Roberts, (3) three business entities that

Roberts allegedly owned or controlled, (4) Greg Mirmelli, a business associate of

Roberts, (5) four entities that Mirmelli allegedly owned or controlled, and (6) four

trusts that Roberts allegedly used to secret funds.  The plaintiffs allege that all of these

persons or entities were involved in Roberts's overarching attempt to defraud the

plaintiffs.  In light of these allegations, the Court is satisfied that the requirements of

Rule 20 have been met with respect to these persons.

In connection with the naming of the four trusts allegedly used by Roberts to

secrete funds, the plaintiffs additionally request that Roberts provide them with the

33

names of the trustees, their addresses, and the trusts' agents for service of process. Roberts has not objected to this. The Court therefore grants the request by the plaintiffs.

As discussed above, the plaintiffs also seek to add Werner Grady Associates as a defendant. As mentioned, the claims asserted against Werner Grady Associates are identical to those asserted in the PSAC against existing-defendant Wealth Guard. In light of the fact that the Court has determined that these claims against Wealth Guard are insufficient, the Court denies the plaintiffs' motion to add Werner Grady Associates as a defendant, as the allegations against it would also necessarily be insufficient to state a claim. With respect to the remaining defendants that the plaintiffs seek to join, the Court grants the plaintiffs' motion to join pursuant to Rule 20.

B. As to First Bank's Motion to Dismiss

In addition to opposing the plaintiffs' motion to amend their complaint, First Bank had also previously moved to dismiss the causes of action alleged against it in the FAC. These causes of action are breach of contract, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty.

The factual assertions with respect to First Bank in the FAC are substantially and materially the same as the factual assertions in the PSAC. Therefore, the Court's analysis of the breach of contract claim against First Bank in the PSAC applies to the FAC, and the Court dismisses that claim for the reasons set forth above. With respect to the claims in the FAC for aiding and abetting fraud and aiding and abetting breach of fiduciary duty, the Court finds that these claims do not withstand a Rule 12(b)(6)

challenge.  As with Wachovia and the Grady Defendants, the Court finds that the FAC does not allege facts that give rise to a strong presumption that First Bank had actual knowledge of Roberts's alleged underlying fraud.  Therefore, to the extent that the plaintiffs do not withdraw these claims, the Court dismisses these remaining claims against First Bank.

**C. As to Wachovia's Motion to Dismiss and Request to Strike the Plaintiffs' Jury Demand**

    **1. Motion to Dismiss**

Just as the PSAC does, the FAC asserts against Wachovia claims for breach of contract, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty. As with First Bank, the PSAC's factual assertions with respect to Wachovia are materially identical to those asserted in the FAC.

As discussed above, the Court has granted in part the plaintiffs' motion to amend their complaint with respect to the contract claim asserted against Wachovia. Therefore, Wachovia's motion to dismiss this claim in the FAC is mooted with respect to the breach of contract claim.  However, for the same reasons discussed in the context of the PSAC, the Court dismisses the contract claim in the FAC that is based on Wachovia's general alleged failure to investigate Roberts's background and transactions.  With respect to the plaintiffs' claims for aiding and abetting fraud and aiding and abetting breach of fiduciary duty, the Court has also addressed these in the context of the PSAC, and found them insufficient.  The Court therefore dismisses these claims in the FAC as well.

## 2. Motion to Strike the Jury Demand

Wachovia also moves to strike the plaintiffs' jury demand with respect to their claims against it, on the ground that the Harvey Silverman promissory notes include an explicit waiver of a jury trial.  The plaintiffs have not responded to Wachovia's motion.

The first promissory note, dated July 23, 2005, establishing the line of credit from Wachovia provides in pertinent part:

> *WAIVER OF JURY TRIAL.* TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE. THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

(Schnitzer Aff., Ex. D.)

The Court is satisfied that this waiver meets the legal requirements for a contractual waiver of the right to trial by jury.  To be sure, the plaintiffs have alleged that Harvey Silverman did not knowingly sign the second and third promissory notes,

which also contain jury waivers.  However, as the only remaining claims that the plaintiffs assert against Wachovia are based on the theory that a binding contract existed between Wachovia and the plaintiffs, the Court finds that this jury waiver is enforceable.  The plaintiffs' request for a jury with respect to their claims against Wachovia is therefore provisionally stricken.

**D. As to Grady's and Wealth Guard's Motion to Dismiss**

The FAC alleges that Grady and Wealth Guard aided and abetted the fraud and breach of fiduciary duty by Roberts.  With respect to these claims, the FAC alleges facts materially identical to the PSAC, except that it also states facts with respect to the involvement of Grady and Wealth Guard with an account at Pacific Mercantile Bank.  Specifically, the FAC alleges that Grady "acted as an agent or loan officer" of Pacific Mercantile Bank, and "[u]pon information and belief, was paid hundreds of thousands of dollars for arranging the Pacific Mercantile Credit Line."  (FAC, ¶¶ 124–25.)

The Court finds that the additional facts alleged in the FAC with respect to Pacific Mercantile Bank do not alter the Court's conclusion that the plaintiffs have not alleged valid causes of action against Grady and Wealth Guard.  Just as with the plaintiffs' allegations with regard to the Grady Defendants' involvement with First Bank and HARC Financial, the plaintiffs have not alleged any facts that raise a strong inference of actual knowledge of the underlying alleged fraud.  The Court therefore dismisses the claims against Grady and Wealth Guard as stated in the FAC.

**E. As to the Motion by Roberts to Dismiss or Stay Based on Related Action**

Roberts has moved to dismiss or stay the present claims against him, on the ground that they are subsumed in a prior lawsuit commenced in United Stated District Court for the District of Florida (the "Florida Lawsuit").  The plaintiffs oppose this motion.

The parties agree that the present lawsuit was commenced in state court on March 13, 2009, but that Roberts was not at that time named as a defendant in this suit. The plaintiffs at that time had alleged the same basic facts regarding his alleged fraud, but had only named First Bank and Deutsche Bank as defendants.  On April 2, 2009, First Bank removed the plaintiffs' suit to this court, and also filed an action against Harvey Silverman, Silverman Partners, and Marc Roberts to recover on the loan First Bank had advanced under the credit agreement described above.

On May 19, 2009, Roberts commenced the Florida Lawsuit, naming Harvey Silverman and Silverman Partners as defendants.  Roberts alleged that Harvey Silverman and Silverman Partners had breached a contract with him to fund certain real estate projects he had located.  Roberts also requested that the court declare that Silverman shared a burden in the debt owed by both parties to various banks, including First Bank, Deutsche Bank, and Wachovia.  Roberts's action requested a ruling on the disposition of essentially the same corpus of debt that is at issue in the present case.

On June 8, 2009, the plaintiffs amended their complaint in the present action and named Roberts as a defendant.  This amendment established the FAC as the controlling pleading in this case, and its allegations are described above in detail.

38

The Second Circuit provides that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." First City Nat'l Bank & Trust v. Simmons, 878 F.2d 76, 79 (2d Cir.1989); accord D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).  However, the "first filed" rule is not a hard and fast rule, but rather, subject to the discretion of the district court judge.  Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir.1991) (citing Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952)).

Here, there is some uncertainty in applying the first filed rule, because the first-filed case, commenced in New York, contained the essence of the present case but did not name Roberts as a defendant.  Only after Roberts filed suit in Florida on essentially the same issues did the plaintiffs name him in the present action.  However, the Court finds that on balance, it is not appropriate to stay or dismiss the present claims against Roberts.  Even applied literally, the "first filed" rule may well favor the present action over the action in Florida.  While Roberts was not named as a defendant before the Florida Lawsuit was filed, the previously-filed present action clearly has concerned the basic facts presently at issue from its very inception.  Moreover, the Court finds that the related action, filed by First Bank and presently pending in this district, presents an added special circumstance that militates against dismissing or staying the pending claims against Roberts.  The Court therefore denies Roberts's motion to stay or dismiss based on the Florida Lawsuit.

**F. As to the Plaintiffs' Requests for Provisional Relief**

As discussed above, the plaintiffs moved on November 20, 2009 by order to show cause for (1) an attachment of the Roberts assets, (2) a preliminary injunction enjoining Roberts from acting on behalf of or with the authority of the plaintiffs and from running the day-to-day operations of any Limited Liability Corporations in which the plaintiffs and Roberts share an interest, (3) expedited discovery, and (4) an accounting of the Limited Liability Companies that Roberts controls and in which the plaintiffs invested. The Court has already ruled on the plaintiffs' request for expedited discovery and also provisionally denied the plaintiffs motion for an order of attachment. All other requests remain pending.

**1. As to the Plaintiffs' Request for Attachment**

The plaintiffs have requested that the Court attach the assets of Roberts pending the resolution of this case. Under Fed. R. Civ. P. 64, the remedy of attachment is governed by the law of the state in which a district court sits. <u>Bray v. Leverage Group</u>, 2008 WL 4834214, at *4 (E.D.N.Y. Nov. 4, 2008). "Under New York law, to obtain an order of attachment, the moving party must demonstrate that (1) it has a cause of action for a money judgment, (2) there is a probability of success on the merits, (3) one or more of the enumerated statutory grounds for attachment under N.Y. CPLR § 6201 exists, and (4) the amount demanded exceeds the amount of all counterclaims known to the party seeking the attachment." <u>Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp</u>, 2006 WL 2337186, at *4 (citing N.Y. CPLR §§ 6201, 6212(a)).

With respect to showing probability of success on the merits, "the moving party [must] demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case." Musket Corp. v. PDVSA Petroleo, S.A., 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007). In assessing whether a plaintiff can show a probability of success on the merits, "the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." Monteleone v. Leverage Group, 2008 WL 4541124, at *6 (E.D.N.Y. Oct. 7, 2008) (citing Bank of Leumi Trust Co. v. ISTIM, Inc., et al., 892 F. Supp. 478, 481-82 (S.D.N.Y. 1995)).

As for grounds for attachment under New York law, CPLR § 6201 provides in pertinent part:

> An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when: 1. the defendant is a nondomiciliary residing without the state . . .

Here, Roberts is a nondomiciliary residing without the state, so this requirement of CPLR § 6201 is satisfied. However, the Court finds that the plaintiffs have not established a probability of success on the merits in the present action, and that an order of attachment is therefore not appropriate.

In substantive support for their motion for attachment, the plaintiffs submit (1) an affidavit by Harvey Silverman, (2) an affidavit by Thomas Decea, Esq., attorney for the plaintiffs, and (3) an affidavit by Anne M. Eberhardt, a forensic accountant. Harvey Silverman's testimony largely reiterates the allegations against Roberts contained in the

41

plaintiffs' complaints, and alone, does not rise to the level of showing probable success on the merits.  Mr. Decea's testimony similarly repeats many of these allegations, except also to assert that Roberts is in possession of significant assets.  This, too, does not show probable success on the merits.

Finally, the Court finds that the testimony of Eberhardt, the plaintiffs' forensic accountant, is inconclusive at best.  Eberhardt states that she examined the books of the legal entities that Roberts controls, as well as eighty-nine bank accounts associated with Roberts and those entities.  Eberhardt describes the movement of funds between these accounts, but concludes only that "without access to the underlying business records [associated with these transactions], the business purpose of this type of activity is unclear."  (Eberhardt Aff., ¶ 10.)  Eberhardt also states that she observed certain round dollar figure transactions among accounts that were notated as being to "cover invoices."  Eberhardt's only conclusion from this, however, is that "these payments warrant further scrutiny."  (Id., ¶ 14.)  In the Court's view, this is insufficient to show a probability of success on the merits of the plaintiffs' claims against Roberts.  The Court therefore denies the plaintiffs' request for an order of attachment.

### 2. As to the Plaintiffs' Request for a Preliminary Injunction

The plaintiffs have also requested a preliminary injunction against Roberts from acting on behalf of or with the authority of the plaintiffs, and from running the day-to-day operations of any Limited Liability Corporations in which the plaintiffs and Roberts share an interest.  Roberts opposes this relief.

The Second Circuit has provided that a party seeking preliminary injunctive relief must establish "(a) that the injunction is necessary to prevent irreparable harm and (b) either that (i) it is likely to succeed on the merits of the underlying claim or (ii) there are sufficiently serious questions going to the merits of the claim as to make it a fair ground for litigation and that the balance of the hardships tips decidedly toward the movant." Eng v. Smith, 849 F.2d 80, 81–82 (2d Cir. 1988).

Here, the plaintiffs argue that the irreparable harm prong is satisfied because there is potential ongoing harm to the plaintiffs' business reputation and credit rating. However, the Court does not address this issue, because it finds that the plaintiffs have shown neither a likelihood of success on the merits nor that the hardships tip decidedly towards them.  The Court has already addressed the basis for its determination that the plaintiffs have not established a likelihood of success on the merits.  With respect to hardships, the plaintiffs argue only the conclusion that they "will continue to suffer irreparably absent the relief requested by this motion," and that, "[c]onversely, Roberts [] will not be prejudiced by being prevented from doing what legally and ethically he cannot."  (Pls'.  Mem. L. in Supp. of Mot. for Prelim. Injunc. at 9 (emphasis in original).)  The Court is unconvinced, and denies the plaintiffs' request for a preliminary injunction.

### 3. As to the Plaintiffs' Request for an Accounting

The plaintiffs also request an accounting by Roberts, although they do not explicitly set forth what they request to be accounted for.  In fact, the plaintiffs do not request an accounting in their moving papers, but only generally describe this relief in

43

their Memorandum of Law in support of their motion.  It is also unclear to the Court

what information the plaintiffs expect to uncover through an accounting that they will

not uncover during discovery.  At this point, without a clearer statement from the

plaintiffs, the Court finds that an accounting would not be appropriate.  The Court

therefore denies the plaintiffs' request for an accounting without prejudice to renew

with a clearer statement of the relief requested.

**G. Transfer of the Present Case**

As discussed above, at the time that the present case was removed from state

court, First Bank also commenced a proceeding in the District Court for the Eastern

District of New York to recover on the value of the loan it had advanced to Harvey

Silverman, Silverman Partners, and Roberts.  By inadvertence, that case and the present

case were not marked as "related," and therefore were not placed before the same

judge.  Thus, First Bank's action, given the docket number 09-cv-1371, was first filed

and assigned to United States District Judge Sandra J. Feuerstein.  The present case,

given the docket number 09-cv-1372, was assigned to this Court.

It is the rule of this district that related cases be assigned to the judge to whom

the related case with the lowest docket number was assigned.  <u>See</u> Eastern District

Local Rule 50.3.1(e).  As the present case and First Bank's case are related, the Court

now corrects the original failure to mark the cases as related, and transfers this case to

Judge Feuerstein.

**III. CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiffs' motion to amend their complaint and add new defendants is granted in part and denied in part as described above; and it is further

**ORDERED** that First Bank's motion to dismiss is granted; and it is further

**ORDERED** that Wachovia's motion to dismiss is granted; and it is further

**ORDERED** that the plaintiffs' jury demand with respect to their claims asserted against Wachovia is stricken; and it is further

**ORDERED** that Grady's and Wealth Guard's motion to dismiss is granted; and it is further

**ORDERED** that Roberts's motion to dismiss or stay is denied; and it is further

**ORDERED** that the plaintiffs' motion for an order of attachment is denied; and it is further

**ORDERED** that the plaintiffs' motion for a preliminary injunction is denied; and it is further

**ORDERED** that the plaintiffs' motion for an accounting is denied without prejudice to renew; and it is further

**ORDERED** that, pending the plaintiffs' filing of the second amended complaint, the caption of this action is amended to read as follows:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
SILVERMAN PARTNERS, L.P., HARVEY
SILVERMAN and KAREN SILVERMAN,

                Plaintiffs,

            -against-

WACHOVIA BANK, N.A. and MARC
ROBERTS,

                Defendants.
--------------------------------------------------------X

and it is further


        **ORDERED** that the Clerk of the Court is directed to reassign this case to

United States District Judge Sandra J. Feuerstein.

**SO ORDERED.**

Dated: Central Islip, New York
February 20, 2010


                              */s/ Arthur D. Spatt*
                               ARTHUR D. SPATT
                        United States District Judge